UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT M. GENOVA, | |
| Plaintiff, | **Civil Action No.** |
| v. | |
| THE CITY OF GLEN COVE; THE CITY OF GLEN COVE POLICE DEPARTMENT; CHIEF WILLIAM WHITTON, Individually and as an agent of the employer; DEPUTY CHIEF ROBERT MacDONALD, Individually and as an agent of the employer; SERGEANT PATRICK HALL, Individually; SERGEANT JACK MANCUSI, Individually; LIEUTENANT JOHN MANDATO, Individually, | **CV 13-4088** |
| Defendants. | **BIANCO, J.**<br>**WALL, M.J.** |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is a civil rights action against the Defendant parties, individually and collectively, for the violation of Plaintiff's guaranteed constitutional, civil, and statutory rights.

2. This action arises out of the concerted efforts of the defendant parties to unlawfully chill the Plaintiff's right to freedom of association due to his political affiliation with a candidate for office, by and through the adverse work related treatment of the Plaintiff, and the Defendants' violation of Plaintiff's right to privacy in his confidential health information which was improperly obtained and disclosed by his Defendant employers, in tandem with the Defendants' interference with Plaintiff's right to take Family and Medical Leave, and the

retaliatory acts taken against the Plaintiff, in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601 *et seq.*

3.  The Plaintiff seeks monetary damages for the harassment and hostile treatment he experienced due to the retaliatory actions and conduct of the Defendant parties causing extreme stress and anxiety, humiliation, embarrassment, mental anguish and damage to his reputation, and ultimately Plaintiff's separation from employment and loss of salary and benefits. Accordingly, Plaintiff seeks equitable and compensatory damages, back pay, front pay, reinstatement, emotional damages, prejudgment interest and whatever other relief is appropriate to serve the interests of justice and assure that his remedy is full and complete.

## II. JURISDICTION and VENUE

4.  Jurisdiction of this Court is invoked pursuant to, and under, 29 U.S.C. Section 2617, 28 U.S.C. Sections 1331 and 1343(a) in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First and Fourteenth Amendments to the United States Constitution.

5.  The value of the rights in question is in excess of $100,000.00 exclusive of interest and costs.

6.  The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, *et seq.*, this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable, and in the interests of justice, in order to provide the Plaintiff with a full and complete remedy for the violation of his rights.

7.  The Plaintiff requests that the Court exercise its supplemental jurisdiction under 28 U.S.C. § 1367 over the New York State Public Health Law claim raised in this action, which is based upon the same operative facts as the federally based claims.

8.  Venue is properly in this district pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged below were committed within this district.

### III. JURY TRIAL DEMANDED

9.  Plaintiff demands a trial by jury on each and every one of his claims as set forth below.

### IV. PARTIES

10. Plaintiff Scott Genova ("Genova") is a male citizen of the United States and a resident of Nassau County, State of New York.

11. At all times relevant to this complaint, Genova was employed by the City of Glen Cove Police Department as a Police Officer assigned to patrol assignments and ultimately, desk duty.

12. Genova was fully qualified to perform the essential functions of his position as a police officer.

13. In addition, Genova was a member of the Glen Cove Police City Police Benevolent Association, a collective bargaining unit that negotiated on behalf of the City of Glen Cove Police Department personnel with the City of Glen Cove concerning the terms and conditions of his employment.

3

14. Defendant City of Glen Cove ("the City") is a municipal entity existing under the laws and Constitution of the State of New York, and maintains its principal offices at City Hall, 9 Glen Street, Glen Cove, New York 11542.

15. The City is a public agency and employs fifty (50) or more employees and is therefore an employer within the meaning of FMLA, 29 U.S.C. Section 2611(4)(A) and 2611 (4)(B).

16. Defendant City of Glen Cove Police Department ("GCPD") is an agency of the City of Glen Cove that is charged with providing law enforcement services to the residents of the City.

17. The City and GCPD are joint employers of the Plaintiff both exercising joint control with respect to firing and hiring decisions, medical leave decisions, police budget matters and expenditures, ownership and maintenance of police equipment and police facilities, the supervision and training of police officers, and the promulgation of policies and practices effecting those officers.

18. Defendant Chief William Whitton ("Whitton") was at all times relevant the Chief of the City of Glen Cove Police Department and the final policy maker for the Police Department with respect to employee policies and practices, including the hiring and firing of employees and decisions regarding employee medical leave time, including the Plaintiff.

19. Defendant Whitton was also Plaintiff's superior, was personally involved in actions alleged as unlawful and condoned, ratified and sanctioned other adverse acts taken against Plaintiff, and is a defendant in his individual capacity and as an agent of the City and GCPD.

20. As an agent of the City and GCPD acting in their interests, Whitton is therefore an employer within the meaning of FMLA, 29 U.S.C. Section 2611(4)(B).

21. Defendant Deputy Chief Robert MacDonald ("MacDonald") was at all times relevant the Deputy Chief of the City of Glen Cove Police Department and Plaintiff's supervisor.

22. Defendant MacDonald was also Plaintiff's superior, was personally involved in actions alleged as unlawful and condoned, ratified and sanctioned other adverse acts taken against Plaintiff, and is a defendant in his individual capacity and an agent of the City and GCPD.

23. As an agent of the City and GCPD acting in their interests, MacDonald is therefore an employer within the meaning of FMLA, 29 U.S.C. Section 2611(4)(B).

24. Defendant Sergeant Patrick Hall ("Hall") was at all times relevant the President of the City of Glen Cove Police City Police Benevolent Association ("PBA"), the collective bargaining unit of the City of Glen Cove Police Department, of which the Plaintiff was a member, and a superior of the Plaintiff's, and an agent/employee of the GCPD.

25. Defendant Hall is sued in his individual capacity.

26. Defendant Sergeant Jack Mancusi ("Mancusi") was at all times relevant Plaintiff's supervisor/superior, and an agent/employee of the GCPD.

27. Defendant Mancusi is sued in his individual capacity.

28. Defendant Lieutenant John Mandato ("Mandato") was at all times relevant Plaintiff's supervisor/superior, and an agent/employee of the GCPD.

29. Defendant Mandato is sued in his individual capacity.

## V. RELEVANT FACTS

30. Genova began his service with the City of Glen Cove Police Department in July of 2004, when he was hired as a police officer.

31. In or about March 2005, Genova graduated from the police academy having successfully completed all of the necessary training and possessing the necessary qualifications for employment.

32. From March of 2005 until March of 2009, Genova was assigned to patrol work in a police vehicle responding to dispatched calls and pick up assignments requiring police service on the 7PM to 7AM tour of duty.

33. At all times during his employment, Genova performed his police duties and functions in an exemplary manner and he was a decorated, dedicated and loyal public servant.

34. His performance was always rated as outstanding and from 2005 to 2007 he earned 5 Commendations for Excellent Police Work.

35. Genova also received a Top Cop Award for saving a man's life in a car fire.

36. On or about March 11, 2009, Genova was diagnosed with stage 4A Nasopharyngeal Head and Neck Cancer and underwent months of radiation treatment and chemotherapy.

37. He suffered with various side effects as a result of this treatment including blood clots in his eyes, double vision, permanent hearing loss in both ears and other infirmities.

38. In April of 2010, Genova sufficiently recovered from his disease and its side effects to return to work on restricted duty assignment in the Detective Division.

39. Genova had been paid by his employer for the time he was out of work.

6

40. In or about September of 2011, Genova received medical clearance from his eye surgeon that his eyesight had been fully restored.

41. In or about October of 2011, having recovered from his disease sufficiently to work full duty, Genova re-qualified with his firearm and was restored to patrol duty.

42. In or about March of 2011, Genova met and became friends with Robert Germino.

43. In or about May of 2011, Robert Germino, a former marine who served in Iraq, was nominated by the local political party to run as the Republican candidate for a legislative position with the 18th District in Nassau County.

44. Delia DeRiggi-Whitton, who is Defendant Whitton's ex-wife, was the Democratic candidate running for the same 18th District seat, and her candidacy was significantly and openly supported by Defendant Chief Whitton, other named defendant parties, and subordinate GCPD members.

45. Genova exercised his right to engage in political activity by making a contribution in October of 2011 of three hundred dollars ($300) to Robert Germino's political campaign.

46. In accordance with the disclosure involved with political/election contributions, Genova's contribution to Robert Germino's campaign was posted online as public information.

47. The post identified Genova's name, his address, the date his contribution was made, the corresponding check number of his contribution, the dollar amount, and clearly and unequivocally identified that his contribution was made to the "Friends of Robert Germino."

47A. Based upon information and belief Genova's contribution to Germino was known by Whitton and other named Defendants in this action.

7

48. Also, in or about October of 2011, Genova's support of Germino was made publicly known again when Genova placed a sign in support of Robert Germino's political campaign on his father's property located in Glen Cove.

49. Whitton and other named Defendants in this action knew this property belonged to Genova's father and that Genova placed the sign on the property.

49A. It was well known by Whitton and other named Defendants that Genova supported Germino based upon the public message of support conveyed by the sign placed on his father's property and the campaign contribution.

50. Genova also attended an event on Veteran's Day in November of 2011 at which he served in the color guard with two of his fellow officers.

51. Robert Germino was also in attendance at this event and Genova shook Germino's hand at the event in the presence of his fellow officers.

52. This Veteran's Day event was well attended by members of the City and GCPD, such as Defendants Whitton and Hall, as well as fellow officers, who saw Genova's public support for Robert Germino.

53. Genova was later questioned in police headquarters by Defendant Hall as to why he [Genova] shook Germino's hand, and Genova made clear his support for Germino.

54. Genova was also asked by a fellow officer why he shook Germino's hand and another office remarked "I wouldn't shake his [Germino's] hand."

54A. It was well known by named Defendant managers and their subordinates within GCPD that Genova supported Germino.

55. As a result of Genova's above-described public support for Robert Germino's run for

local political office, he was adversely treated by named Defendant managers in that his assignment duties were changed and he was subjected to an unrelenting pattern of harassment at work by Whitton, MacDonald, Hall, Mancusi and Mandato.

56.  In or about October of 2011, the harassment began with derogatory postings and pictures mocking Genova, which were placed at the police station with the condonation of Defendants Whitton, MacDonald, and Hall.

57. Genova was also subjected to verbal ridicule by his fellow officers and by his superiors due to his support for Robert Germino.

58. Genova's superior and union President, Defendant Hall, spearheaded a campaign of verbal harassment directed at Genova by orchestrating his peers and superiors to harass Genova regarding his association with candidate Robert Germino.

59. Genova was advised that Defendant Whitton did not approve of Genova's support For Germino's political campaign for office.

60. Genova was also advised by a fellow officer that Germino's campaign was viewed by the Defendants and Genova's fellow officers as anti-police and anti-union, and a direct attack on Defendant Hall as the PBA union leader, and that was why they viewed Genova's public support for Germino so negatively.

61. Genova was questioned repeatedly and unceasingly at work by his fellow officers and superiors about his affiliation with Robert Germino.

62. For example, officer Linares was listening to a political talk radio station while on patrol in a vehicle with Genova and was prompted to question Genova about his support for Germino.

63. As a further example, another officer Albin questioned Genova implying that Genova shared or revealed information with Germino about internal police department matters.

64. Other officers, like Perry also accused Genova of informing Germino of police business.

65. The negative opinions and attitudes of fellow officers directed at Genova were fueled by the Defendant managers in this action who encouraged, condoned and ratified the conduct.

65. In or about November of 2011, Defendant Whitton advised Genova that an officer assigned to the main desk at the police station would be retiring soon and that he [Genova] would be assigned to replace her.

66. Thereafter, in or about December of 2011, Genova's duties and responsibilities changed from patrol duty assignments to clerical desk duty assignments.

67. This change of assignments was an adverse job action because involuntary removal from patrol assignment is generally done as punishment or pending disciplinary action.

68. Genova's removal from patrol assignment was done by Whitton and other named Defendant managers to punish Genova for his political association with Germino.

69.    Genova's removal from patrol to a clerical assignment was adverse because it restricted the career advancement opportunities of Genova, such as detective work.

70. In December of 2011, Genova took and passed with a score of ninety percent (90%) the qualifying certification examination for desk duty, as directed, even though he was qualified for patrol assignment and desired to be on patrol.

71. On or about December 21, 2011, Defendant Mancusi stated to Genova, at the coast guard academy, that Defendant Chief Whitton was opposed to Genova campaigning for Germino, confirming for Genova that Whitton, as well as Hall, were orchestrating, supporting and condoning the adverse acts directed at him.

72. Defendant Mancusi also stated that Defendant Whitton wanted his ex-wife, candidate Delia DeRiggi-Whitton, to win the election.

73. Signs were placed at the police station mocking Genova and Robert Germino, which were designed to intimate Genova from associating with candidate Germino, and were designed to isolate Genova from his fellow officers, which they succeeded in doing.

74. In order to function properly police officers depend upon one another for support and comraderie.

75. Genova began to experience the deliberate loss of this support from his fellow officers and became more and more isolated and ostracized.

76. This is an adverse job action because it created for Genova the fear that he would not be supported by his fellow officers, which makes him shunned at work and places him at risk for injury or death if he requires assistance for police related activity and no one responds to assist him.

77. This is also an adverse job action because Genova no longer felt supported by his union which subjected him to a loss of support, counsel and advice, all of which are very important to an active police officer.

78. The above-referenced workplace signs were adverse and harassing as they implied that Genova was involved in a sexual relationship with Germino in an deliberate effort to humiliate Germino. Copies of some of these signs are annexed hereto as **Addendum** to this Complaint.

79. Defendants MacDonald and Mandato were physically in the radio room where the above-referenced signs were posted; however, neither MacDonald nor Mandato or any of the other Defendants took any corrective action to address this harassment or any of harassment that Genova was subjected to.

80. The results of the November 2011 election for the 18th District seat were too close to call in November, with initial tallies at that time showing Germino in the lead against democratic candidate Whitton.

81. It was not until over a month later, in or about mid-late December of 2011, that the final votes were tallied indicating that Delia DeRiggi-Whitton had narrowly won the election.

82. At various times between November of 2011 to April of 2012, Genova complained to superior officers about the harassing conduct and postings he was being subjected to, to no avail, and the harassment continued unabated.

83. Instead, Genova continued to be ridiculed about his affiliation with Robert Germino, as for example, on December 23, 2011, attached to Genova's work clip board someone wrote "I like penis" referring to his association with Germino.

84. As another example of the harassment and derogation that Genova was subjected to, his co-workers would frequently draw pictures of penises in his desk officer book.

85. After Genova would replace the pages of his book, his co-workers would again draw penis pictures in a repeated effort to humiliate Genova by suggesting that he was involved in a sexual relationship with Robert Germino, and to harass and humiliate him.

86. Genova was isolated and ostracized by his fellow officers and supervisors.

87. All of the harassment that Genova experienced was severe and persistent.

88. On March 27, 2012, Genova was advised that he was not going to be certified as a desk sergeant, despite having passed the qualifying examination and working on the main desk for months.

89. This caused Genova stress and anxiety as it was designed to do because he became concerned that the Defendants were conspiring to terminate his employment.

90. On March 30, 2012, Genova was removed from his desk assignment by Defendants Whitton and McDonald.

91. At no time during Genova's four (4) months of desk duty from December 2011 to March 2012, was he advised that there were any issues with his work performance or his ability to perform his duties.

92. The hostile work environment perpetrated by Genova's co-workers and superiors took a toll on Genova's mental and physical health.

93. In late March and early April of 2012, Genova experienced severe stress and anxiety, including debilitating panic attacks due to the workplace harassment.

94. Genova advised his employer by phone on the morning of April 9, 2012, that he would require sick leave and would be unable to report for work due to chest pains.

95. On April 9, 2012, Genova went to the emergency room because of chest pains/panic

attack that he was experiencing.

96. At that time, Genova was hospitalized for treatment until April 20, 2012.

97. Genova's treating doctor provided a note, which Genova gave to his employer advising that he [Genova] was under his care from April 9 to April 20, 2012.

98. The note also advised that Genova was being referred for follow-up care and would not be able to return to work for approximately four to six weeks.

99. The note did not divulge Genova's underlying condition to the Defendants in order to protect Genova's rights of confidentiality in his health status and information.

100.    However, during Genova's period of hospitalization in April of 2012, Defendant MacDonald showed up at the hospital and, while Genova was on medication, directed that he [Genova] execute a release so that the Defendant employers could access all of Genova's medical and treatment records.

101.    McDonald had no lawful right to exercise his authority and direct Genova to sign a waiver of confidentiality.

102.    Genova could not provide informed consent at that time to allow the Defendant employers to access his private health information and records given his condition, and it was impermissible of Defendant MacDonald to seek to take advantage of Genova's weakened condition to obtain an executed release.

103.    Upon information and belief, Genova's private medical information and the records concerning his treatment for an otherwise private and confidential condition, caused by the harassment he experienced at work, were disclosed to Defendants Whitton and MacDonald, and to other individuals employed by the City and/or GCPD.

104.    It was evident that Genova's private and confidential health information was obtained and disclosed as Defendant MacDonald referred to details, in written correspondence dated May 15, 2012, that he [MacDonald] could not have known unless he obtained Genova's confidential health information.

105.    In fact, MacDonald attached Genova's medical records to this correspondence.

106.    On or about April 20, 2012, Genova provided notice to his employer of his intention to exercise his rights to take medical leave in order to address his serious, health condition.

107.    Genova provided to his employers by submitting a note from his treating doctor advising that he [Genova] could not work for four to six weeks, as he would require further hospital care.

108.    For more than twelve (12) months prior to Genova's request for FMLA leave on or about April 20, 2012, Genova had been employed by the Defendants.

109.    Genova had performed at least 1,250 hours of service for the Defendant employers during the preceding twelve month period, from approximately April 2011 to April 2012.

110.    Based on the foregoing, Genova was an eligible employee under the FMLA, as an employee of the Defendants.

111.    Despite being provided notice of Genova's request and need to take medical leave to address his serious health condition, Defendants did everything they could to interfere with Genova's exercise of these rights to leave time.

15

112.    For an example of the Defendants' interference, from April 20 through May 15, 2012, members of the GCPD, including Defendants Hall and McDonald, continually harassed Genova by contacting him repeatedly by phone – with calls and text messages - directing that he [Genova] appear for duty and report to work.

113.    In so doing, the Defendant employers interfered with Genova's right to medical leave time, particularly given the fact that Genova had advised the Defendant employers of his intention to take leave time.

114.    As a further example of the Defendants violation of the law and harassment of Genova, on May 14, 2012, Defendant MacDonald contacted Genova by phone, directing that Genova appear the next day, on May 15 for a medical evaluation.

115.    On the evening of May 14, 2012, Genova advised Defendant MacDonald that he would be unable to report for such an evaluation due to his being on medical leave, which MacDonald already knew.

116.    The Defendants' continual interference while Genova was on leave caused Genova to experience a  debilitating panic attack on the evening of May 15, 2012, which required hospitalization until May 22, 2012.

117.    Prior to his hospitalization on May 15, 2012, Genova had filed harassment charges against Defendant GCPD with the Northport Police Department in an effort to stop the incessant calls and text messages he was receiving while he was on medical leave.

118.    In the report filed with the Northport Police Department, Genova advised the police that he was repeatedly being sent texts from Defendants Hall and MacDonald directing that he report to work, despite Genova being out from work for medical reasons.

119.    According to the report, Defendant Hall was advised by the police that Genova was hospitalized on May 15, 2012.

120.    On May 22, 2012, under tremendous stress and pressure from his employer, Genova was released from the hospital and later that same day was arrested for a domestic incident with his estranged wife, but was released from custody that night, in consideration of the state of his health and the absence of any fact susceptible to a finding that he posed a danger or had committed a criminal act.

121.    The harassment of Genova did not abate as on May 24, 2012, Defendant MacDonald contacted Genova repeatedly by phone directing that he report to work the following day.

122.    On May 24, 2012, at 2.51p.m., Defendant MacDonald contacted Genova on his cell phone leaving a voice message directing that Genova report to his [MacDonald's] office the next day, Friday, at 11:00 a.m.

123.    At 3.25p.m. on May 24, 2012, Defendant MacDonald again called Genova this time on his home phone and left a voice message directing that Genova report to his [MacDonald's] office the next day, Friday, at 11:00 a.m.

124.    At approximately 5.51p.m on May 24, 2012, Genova advised Defendant MacDonald by text that he was unable to report due to medical issues. However, it was to no avail.

125.    Defendant MacDonald continued to communicate with Genova directing that he report to work on May 25, 2012, thereby completing ignoring and disregarding that fact that Genova had already provided notice of his intention and need to take medical leave covered by the FMLA.

126.    At 6.03p.m. on May 24, Defendant MacDonald texted Genova stating "if you are not in my office at 1100 hours tomorrow, you will be charged with disobeying a direct order. This is the second time you were ordered to my office and you refused to comply. You again are hereby ordered to be in my office at 1100 hours, Friday, May 25."

127.    At 6.23p.m., on May 24, Genova not feeling well and concerned about the state of his health and fearful about contact with MacDonald, requested that Defendant MacDonald stop contacting him.

128.    By 3p.m. on May 25, 2012, Defendant MacDonald advised Defendant Whitton in writing of the above-detailed communication that MacDonald had had with Genova.

129.    In his memo to Defendant Whitton, MacDonald stated he was charging Genova with violating his order by not reporting to his office at 11a.m.

130.    The promulgation of these disciplinary charges by MacDonald with the condonation and ratification of Whitton was unwarranted given Genova's documented medical leave, and are a further example of the Defendants' interference with, and retaliation for Genova taking FMLA leave time and because of his association with Germino.

131.    By their above-noted conduct and actions, the Defendants Hall, MacDonald and Whitton interfered with Genova's request for medical leave, which he was entitled to under the FMLA.

132.    In short, the Defendants' interference with Genova's exercise of his right to medical leave under the FMLA was so significant that they essentially – in effect - denied his request for medical leave.

133.    As further support of Defendants' interference, the Defendants' failed to correctly record Genova's FMLA leave from April through May of 2012, as his time sheets record his FMLA days as sick days.

134.    Defendants Whitton, MacDonald and Hall controlled, in whole or in part, Genova's ability to take medical leave time from work and to return to his position at the GCPD.

135.    Defendants Whitton, MacDonald and Hall, collectively and individually, interfered with Genova's exercise of his right to take medical leave.

136.    After the disclosure of Genova's confidential health information and in retaliation for his taking FMLA leave, on May 25, 2013, Detective Lieutenant Tom Fitzpatrick and Detective Karl Van Allen, at the direction of Defendant MacDonald with the support and ratification of Whitton, personally arrived at Genova's residence, located in a different county, and advised him that his paycheck had been stopped by Defendant MacDonald.

136A.    The harassment and threats caused Genova's health to deteriorate as designed.

137.    Also, at that time, Fitzpatrick and Van Allen had Genova execute paperwork that had been prepared by Defendant MacDonald.

138.    Defendant MacDonald, with the support ratification and condonation of Whitton, retaliated against Genova by unjustifiably discontinuing Genova's salary.

139.    Genova was under a doctor's care for treatment for his serious medical

condition and required medical leave, which the Defendants unlawfully interfered with.

140.    The above-referenced retaliatory harassment and threats directed at Genova by the named Defendants, and/or with the ratification, condonation and support of each other caused Genova's health to deteriorate, as they were designed to do.

141.    On or about May 31, 2012, Genova resigned from his employment because he felt that there was no alternative available to him to avoid the stress, humiliation, harassment and retaliation that he was subjected to by the Defendants at work, in tandem with the Defendants' blatant interference with his right to medical leave.

142.    Due to the Defendants' above described conduct and actions, Genova found himself unable to cope with the workplace harassment and humiliation any longer, despite being qualified to work as a police officer.

143.    The Defendants achieved their goal of forcing Genova to separate from employment in retaliation for his political association with Germino and for exercising his right to request medical leave, by creating a work environment that was so hostile and intolerable that Genova felt he had no other recourse at the time but to resign from employment.

144.    The Defendant employers unjustifiably and for no legitimate reason stopped paying Genova's salary as of May 25, 2012, and have not fully compensated Genova since that time.

145.    At the time of Genova's separation from employment, he was entitled to accrued sick, holiday, vacation and termination pay, amounting to approximately $56,688.75.

146.     However, the Defendants unjustifiably withheld such pay from Genova and refused to compensate Genova what he was owed unless he sign a waiver waiving any right he has to sue his Defendant employers.

147.     The Defendants blatantly refused to pay Genova the compensation he was due.

148.     Further, the Defendants issued a W-2 form to Genova for fiscal year 2012 which included Genova's withheld but accrued sick, holiday, vacation and termination pay as income.

149.     In so doing, the Defendant employers erroneously and purposefully overreported Genova's income to the IRS, in that they reported income Genova had not received because of the Defendants above-noted unlawful withholding.

150.     As a result, Genova faces a higher tax burden; another deliberate adverse act by the Defendants.

151.     Importantly, due to the Defendants' withholding of compensation due to Genova, he was caused to suffer considerable financial hardship and emotional stress.

152.     For example, Genova's vehicle was repossessed, he amassed considerable credit card debt in the amount of $70,000.00, and was unable to make the mortgage payments on his residence, and he was forced to sell his property at a loss in order to avoid foreclosure.

153.     Genova also suffered the loss of medical coverage and benefits on June 1, 2012, which he currently remains without while being diagnosed with cancer.

154.     Due to the emotional damages he suffered as a result of the Defendants actions, Genova has experienced difficulties in personal interactions.

155.     In addition, on March 20, 2013, Genova filed a complaint with the New York State Division of Human Rights ("the NYSDHR") in which he asserted claims of disability discrimination and sex discrimination/sexual harassment against Defendants The City and GCPD.

156.     Notably, soon after filing the above-referenced complaint with the NYSDHR, on or about April 22, 2013, Genova received a "payout" check in the amount of $27,411.15, from the City of Glen Cove, accompanied by a cover letter from City attorney Vincent P. Taranto and a chart entitled "P.O. Scott Genova Payout."

157.     Defendant Whitton, Mayor Ralph Suozzi and Comptroller Sal Lombardi were also copied on the letter to Genova from attorney Taranto.

158.     The above-referenced "payout" check does not represent all the compensation that is Genova is entitled to or owed, and was too little, too late.

159.     The Defendants withheld this check for approximate eleven (11) months, and it was not until Genova filed a complaint of discrimination with the NYSDHR that the check was sent to him by the Defendants.

160.     The Defendant, the City of Glen Cove, engaged in an unconstitutional practice by permitting the named Defendant parties to harass, humiliate and taunt Genova for his political association with candidate Germino.

161.    The Defendants were either grossly negligent or deliberately indifferent to the constitutional rights of the Plaintiff by permitting the relentless harassment and hostile treatment of Genova because of his political association with Germino, leading ultimately to his forced separation from employment.

162.    The conduct of the individually named Defendants was so outrageous, deliberate, damaging and vindictive that Genova is requesting punitive damages to be assessed.

163.    The Defendants GCPD and City are liable under a theory of respondeat superior and/or vicarious liability for the acts and conduct of its agents and employees for the violation of the FMLA.

164.    Plaintiff has no other adequate remedy at law.

165.    Plaintiff seeks declaratory relief and injunctive relief for the acts complained of herein as unlawful, including his reinstatement, award of his salary due and owing, back pay, front pay, prejudgment interest and compensatory damages.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. §1983 AND THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION CONCERNING THE RIGHT TO POLITICAL ASSOCIATION WITHOUT RETRIBUTION AGAINST DEFENDANTS CHIEF WILLIAM WHITTON, Individually; DEPUTY CHIEF ROBERT MacDONALD, Individually;  SERGEANT PATRICK HALL, Individually, SERGEANT JACK MANCUSI, Individually; and LIEUTENANT JOHN MANDATO, Individually**

166.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

167.    By their conduct and actions the Defendant parties, individually and collectively, have violated the Plaintiff's rights under the First Amendment to the United States Constitution pursuant to 42 U.S.C. §1983 by retaliating against the Plaintiff in order to chill his rights of political association and his right to lawfully engage in political activities outside of work.

168.    The Plaintiff has suffered injuries and damages.


## SECOND CAUSE OF ACTION
**VIOLATION OF 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION CONCERNING THE RIGHT TO PRIVACY IN CONFIDENTIAL HEALTH INFORMATION AGAINST DEFENDANTS WHITTON AND MACDONALD**

169.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

170.    By improperly accessing Plaintiff's confidential health treatment records and thereafter disclosing Plaintiff's health condition and records, the Defendants violated Plaintiff's right to privacy under the Fourteenth Amendment of the United States Constitution and is liable for such violations under 42. U.S.C. § 1983.

171.    The Plaintiff suffered injuries and damages.


## THIRD CAUSE OF ACTION
**VIOLATION OF NEW YORK PUBLIC HEALTH LAW § 18 CONCERNING THE UNAUTHORIZED ACCESS AND DISCLOSURE OF PLAINTIFF'S CONFIDENTIAL HEALTH RECORDS AND CONDITION AGAINST DEFENDANTS WHITTON AND MACDONALD**

172.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

173.    By improperly accessing Plaintiff's confidential health treatment records and thereafter disclosing Plaintiff's health condition, the Defendants violated Plaintiff's right to privacy as provided by the New York State Public Health Law § 18.

174.    The Plaintiff suffered injuries and damages.

## FOURTH CAUSE OF ACTION
## THE CITY OF GLEN COVE IS RESPONSIBLE FOR WHITTON'S, MacDONALD'S, HALL'S, MANCUSI'S AND MANDATO'S CONDUCT

175.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

176.    The Defendant, the City of Glen Cove, uniformly and as a matter of policy and practice indemnified the named Defendant parties, Whitton, MacDonald, Hall, Mancusi, and Mandato, for any award of both punitive and compensatory damages.

177.    Whitton, MacDonald, Hall, Mancusi, and Mandato are employees and agents of the City of Glen Cove and their conduct, as described was taken in the course of their duties and functions as members of the City of Glen Cove Police Department, which are positions funded, authorized and empowered by the City of Glen Cove.

178.    The named Defendant parties actions and conduct, while unlawful and unconstitutional, none the less were actions and conduct taken pursuant to the otherwise funded and authorized performance of their respective duties and functions as agents and employees of the City of Glen Cove.

179.    The Plaintiff is entitled to recover from the City of Glen Cove for the conduct of its agents and employees under federal claim jurisdiction pursuant to the doctrine of respondeat superior.

180.    The Plaintiff suffered injuries and damages.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF 29 U.S.C. §2615(a)(1) DUE TO INTERFERENCE WITH PLAINTIFF'S RIGHT TO TAKE LEAVE COVERED BY THE FMLA AGAINST DEFENDANTS THE CITY OF GLEN COVE, THE CITY OF GLEN COVE POLICE DEPARTMENT, WHITTON, MACDONALD AND HALL**

181.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set herein.

182.    By continually directing Plaintiff to report to work despite his requested medical leave to which he was entitled and eligible for, Defendants willfully interfered with Plaintiff's exercise of his right to take leave covered by the FMLA, in violation of 29 U.S.C. §2615(a)(1).

183.    As a result of the Defendants' willful interference, the Plaintiff suffered injuries and damages.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF 29 U.S.C. §2615(a)(2) DUE TO RETALIATING AGAINST PLAINTIFF FOR TAKING LEAVE COVERED BY THE FMLA AGAINST DEFENDANTS THE CITY OF GLEN COVE, THE CITY OF GLEN COVE POLICE DEPARTMENT, WHITTON AND MACDONALD**

184.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set herein.

185.    By withholding Plaintiff's salary, and forcing his separation from employment because Plaintiff exercised his right to medical leave, Defendants willfully retaliated against Plaintiff for exercising his right to medical leave which he was entitled to and eligible for, in violation of 29 U.S.C. §2615(a)(2).

186.    As a result of the Defendants' willful retaliation, the Plaintiff suffered injuries and damages.

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of the Defendants:

a. Compensatory damages in an amount to be determined at the time of trial, including but not limited to back pay and front pay, pension and benefits, and emotional damages and prejudgment interest;

b. Punitive damages against the individually named Defendants;

c. The convening and empanelling of a jury to consider the merits of the claims;

d. Attorneys' fees and costs;

e. Injunctive and declaratory relief against all Defendants; and

f. Such other and further relief as this Court may deem appropriate and equitable.

Dated: New York, New York
       July 17, 2013

Respectfully Submitted,

Meenan & Associates, LLC
*Attorneys for Plaintiff*
64 Fulton Street, Suite 502
New York, New York 10038
(212) 226-7334
cmm@meenanesqs.com

By: _____
       Colleen M. Meenan
       (CM7439)

# Addendum





*"Thank you Robert for all you do and have done. "*
**-Scott Genova - God Bless You All.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT M. GENOVA,<br><br>        Plaintiff,<br><br>   v.<br><br>THE CITY OF GLEN COVE; THE CITY OF GLEN COVE POLICE DEPARTMENT; CHIEF WILLIAM WHITTON, Individually and as an agent of the employer; DEPUTY CHIEF ROBERT MacDONALD, Individually and as an agent of the employer; SERGEANT PATRICK HALL, Individually; SERGEANT JACK MANCUSI, Individually; LIEUTENANT JOHN MANDATO, Individually,<br><br>        Defendants. | **Civil Action No.** |

## **COMPLAINT**

Respectfully submitted,

MEENAN & ASSOCIATES, LLC
*Attorneys for Plaintiff*
By: Colleen M. Meenan
64 Fulton Street, Ste. 502
New York, NY 10038
(212) 226-7334